IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM MATTIS and DEBORAH MATTIS, | : | |
| Plaintiffs, | : | No. 04-CV-1107 |
| | : | |
| v. | : | Judge Jones |
| | : | |
| GEISINGER MEDICAL CENTER, | : | |
| Defendant. | : | |
| | : | |

**ORDER**

**November 21, 2006**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before this Court is Defendants' Motion for Summary Judgment ("the Motion") (doc. 50), filed on October 2, 2006. Defendants' Motion seeks summary judgment as to Plaintiffs' claims in their entirety. (Rec. Doc. 52 at 2). The Court will note that Defendants requested oral argument in their Brief in Support of the Motion. (Rec. Doc. 52 at 3). However, having thoroughly reviewed the submissions, the Court finds that oral argument would be not be beneficial at this time. Thus, we decline to engage the parties therein. For the reasons that follow, the Motion will be granted in part and denied in part.

**<u>PROCEDURAL BACKGROUND</u>:**

On or about April 22, 2004, Plaintiffs filed their initial Complaint in this

action in the Court of Common Pleas of Luzerne County, naming as Defendant the Geisinger Medical Center ("GMC"). (Rec. Doc. 52-2, Ex. A). Plaintiffs' initial Complaint contains three Counts: Count I appears to allege a negligence claim and/or a claim under the Americans with Disabilities Act ("ADA"), Count II appears to allege a negligence claim, and Count III alleges a loss of consortium claim. (Rec. Doc. 52-2, Ex. A). On or about May 20, 2004, GMC removed the action to this Court on the basis of federal question jurisdiction, in light of Count I's allegations of ADA violations. The action was docketed with this Court as Civil Action No. 04-CV-1107.

On or about November 5, 2004, Plaintiffs filed a second action in the Court of Common Pleas of Luzerne County, naming as Defendants to that Complaint GMC and Geisinger Health System Foundation ("Foundation"). (Rec. Doc. 52-3, Ex. B). Plaintiffs' second Complaint contains two Counts: Count I again appears to allege a negligence claim and/or a claim under the ADA, and Count II appears to allege a negligence claim. (Rec. Doc. 52-3, Ex. B). On or about November 24, 2004, Defendants removed the second action to this Court, also on the basis of federal question jurisdiction. The action was docketed with this Court as Civil Action No. 04-CV-2559.

On or about January 10, 2005, this Court entered an Order approving the

parties' stipulation that the above listed actions be consolidated at Civil Action No. 04-CV-1107. (Rec. Doc. 32).

On or about October 2, 2006, Defendants filed the instant Motion. (Rec. Doc. 50). Having received Defendants' Brief in Support of Defendants' Motion (doc. 52) and Plaintiffs' Brief in Opposition to Defendants' Motion (doc. 60), and having been informed on November 20, 2006, that Defendants did not wish to file a Reply Brief, the Motion, is, therefore, ripe for disposition.[1]

**STANDARD OF REVIEW:**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial." Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992). Summary judgment should not be granted when there is a

[1] The Court notes that Plaintiffs' Brief in Opposition to Defendants' Motion concedes that Plaintiffs lack standing to bring a claim under Title III of the ADA and, thus, that Plaintiffs' claims under Title III of the ADA should be dismissed. (Rec. Doc. 60 at 4-5). Accordingly, Defendants' Motion will be granted to the extent that any claims Plaintiffs alleged under Title III of the ADA will be dismissed.

As Defendants indicated (see doc. 52 at 11 n.3), despite this Court's dismissal of Plaintiffs' ADA claims, the Court has discretion to retain jurisdiction over the pendant state law claims. 28 U.S.C. § 1367(c)(3). Plaintiffs' Brief in Opposition to Defendants' Motion (doc. 60) voiced no objection to this Court's exercise of jurisdiction. Thus, given the posture of this action, and in the interests of judicial economy, convenience, and fairness to the parties, this Court will retain jurisdiction of the pendent claims.

disagreement about the facts or the proper inferences that a fact finder could draw from them. See Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. See id. at 325.

Rule 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor. See Celotex, 477 U.S. at 322-23 (1986).

It is important to note that “the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted). However, all inferences "should be drawn in the

light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992)(citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "As to materiality, the substantive law will identify which facts are material." Id. at 248. A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

**STATEMENT OF RELEVANT FACTS:**

Although the parties largely agree about the circumstances that gave rise to the instant action, they disagree on a few critical areas. When discussing the relevant factual background necessary to resolve the pending Motion, we will, where necessary, view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party, Plaintiffs, in our analysis of the pending Motion.

The instant action arises from an incident that occurred on July 22, 2002, in

which Mr. Mattis fell ("July 22 fall") and was injured when exiting a door located at the base of the north stairwell ("Stairwell No. 4") of the Abigail Geisinger Pavilion ("the Pavilion"). (Rec. Docs. 51, ¶ 4; 59, ¶ 4). The Pavilion is located on the GMC campus and contains, among other things, the Radiology Department. (Rec. Docs. 51, ¶ 4; 59, ¶ 4). At all times relevant to this matter, Mr. Mattis was employed by Geisinger System Services. (Rec. Docs. 51, ¶ 5; 59, ¶ 5).

Mr. Mattis uses a prosthesis because of a below-the-knew amputation. (Rec. Docs. 51, ¶ 7; 59, ¶ 7). Mr. Mattis provided testimony that, following the incident at Geisinger, he is only capable of walking approximately 300 feet. (Rec. Docs. 51, ¶ 7; 59, ¶ 7). Mr. Mattis currently utilizes a Segway personal transporter to assist in traveling between locations. (Rec. Docs. 51, ¶ 7; 59, ¶ 7). Mr. Mattis is married to Deborah Mattis. (Rec. Docs. 51, ¶ 6; 59, ¶ 6).

Defendants allege that as an employee of Geisinger System Services, Mr. Mattis reported what he suspected to be code violations and safety concerns to his coworkers. (Rec. Doc. 51, ¶ 8). Defendants rely on Mr. Mattis' deposition to support their allegations. (See Rec. Doc. 52-5, Ex. D). Plaintiffs, however, deny that Mr. Mattis reported such violations and concerns to coworkers and allege, instead, that he reported them to his supervisors. (Rec. Doc. 59, ¶ 8). Upon review of Mr. Mattis' deposition testimony, the Court agrees with Plaintiffs: on at least

two occasions, Mr. Mattis clearly stated that he reported such code violations and safety concerns to his supervisors, including Jerry Sandel. (See Rec. Doc. 52-5, Ex. D at 271, l. 12-13; at 273, l. 20-21).

Approximately two (2) years prior to his July 22 fall, Mr. Mattis noted that from the outside of the Pavilion, there was no stoop at the exterior exit of Stairwell No. 4, and that as a result, persons exiting Stairwell No. 4 had to step down into the equipment yard. (Rec. Docs. 51, ¶ 9; 59, ¶ 9). Further, Mr. Mattis testified that he reported the lack of stoop at Stairwell No. 4 to Mr. Sandel, the Manager of Facilities Operations at Geisinger System Services. (Rec. Docs. 51, ¶ 10; 59, ¶ 10).

However, Plaintiffs allege that prior to his July 22 fall, Mr. Mattis had never used Stairwell No. 4 to exit the Pavilion and had never seen the doorway from inside the building. (Rec. Doc. 59, ¶ 9). Indeed, Mr. Mattis' deposition testimony and his November 6, 2006 affidavit provide substantial support for Plaintiffs' allegations. (See Rec. Docs. 59-2, Ex. A; 52-5, Ex. D at 383-84). Viewed in the light most favorable to Plaintiffs, prior to his July 22 fall, Mr. Mattis had never used Stairwell No. 4 to exit the Pavilion and on July 22, 2002, he was unaware that the exit he used, Stairwell No. 4, was the same exit with the reported, missing stoop. (See Rec. Doc. 59, ¶ 9; Ex. A).

Defendants also note Mr. Mattis' testimony that approximately nine months to a year after making his initial report to Mr. Sandel, Mr. Mattis was again at the exterior of Stairwell No. 4 and noted that the stoop had not been added. (Rec. Doc. 51, ¶ 11). Thus, Mr. Mattis reported the lack of stoop to Mr. Sandel a second time. (Rec. Docs. 51, ¶ 12; 59, ¶ 12). Plaintiffs admit that no one informed Mr. Mattis that the status of the stoop at Stairwell No. 4 was going to be changed. (Rec. Docs. 51, ¶ 13; 59, ¶ 13). However, Plaintiffs allege that after this second conversation with Mr. Sandel, Mr. Mattis assumed that the stoop would be replaced. (Rec. Doc. 59, ¶ 11). Indeed, Mr. Mattis' deposition indicates that Mr. Mattis made the assumption following a discussion between Mr. Sandel and Mr. Mattis as to stoop placement to facilitate snow removal. (Rec. Docs. 59, ¶ 13; 52-5 at 387, l. 14-21).

Thus, despite his two separate observations and reports of the lack of stoop at Stairwell No. 4, Plaintiffs allege that Mr. Mattis was not aware of the peril involved in using Stairwell No. 4 to exit on July 22, 2002. (Rec. Doc. 59, ¶ 11). Plaintiffs explain that prior to his July 22 fall, Mr. Mattis never used Stairwell No. 4 and never saw the stairway from which he fell from the inside of the Pavilion. (Rec. Docs. 59, ¶ 11; 52-5, Ex. D at 407). Thus, on July 22, 2002, Mr. Mattis "was not aware that the stairway [he] was utilizing was the same exit stair where the

stoop had been removed." (Rec. Doc. 59, Ex. A). Rather, Plaintiffs allege that one of the reasons that Mr. Mattis chose to use that exit was its proximity to his car. (Rec. Doc. 59, ¶ 11).

Citing Mr. Mattis' deposition and his November 6, 2006 affidavit, Plaintiffs allege that on July 22, 2002, Mr. Mattis used Stairwell No. 4 for several reasons. (Rec. Doc. 59, ¶ 15). Perhaps most significantly, Plaintiffs allege that Mr. Mattis was unaware of the peril he faced because he did not realize that Stairwell No. 4 was the exit with the reported, missing stoop. (Rec. Doc. 59, ¶ 15). Mr. Mattis' affidavit supports this allegation. (Rec. Doc. 59, Ex. A). Thus, because he was unaware of the danger, and given the convenience, Stairwell No. 4 was "right there by Dr. Concas' office where he had been," the door was close to his car, and he was on his way to Knapper Clinic, Mr. Mattis used Stairwell No. 4. (Rec. Doc. 59, ¶ 15).

Plaintiffs and Defendants agree on several issues as to what happened on July 22, 2002, and thereafter. During the late afternoon to early evening on July 22, 2002, Mr. Mattis returned to the Radiology Department in the Pavilion to speak with one of the radiologists. (Rec. Docs. 51, ¶ 14; 59, ¶ 14). When he exited, Mr. Mattis used Stairwell No. 4. (Rec. Doc. 59, ¶ 15). Stairwell No. 4 was not the only available exit from the Pavilion. (Rec. Docs. 51, ¶ 16; 59, ¶ 16).

Further, when Mr. Mattis opened the exterior door to Stairwell No. 4, “he stepped on the threshold with his right foot and instantly felt as if something happened to his right leg causing the right leg to collapse and resulting in the July 22 fall.” (Rec. Docs. 51, ¶ 17; 59, ¶ 17). Additionally, approximately a year and a half after the July 22 fall, during Labor Day weekend in 2003, Mr. Mattis returned to Stairwell No. 4 to take pictures of the location of his alleged fall. (Rec. Docs. 51, ¶ 18; 59, ¶ 18). Mr. Mattis’ trip revealed that “[a] stoop was installed at the exterior of Stairwell No. 4 some point after Mr. Mattis’ July 22 fall.” (Rec. Docs. 51, ¶ 19; 59, ¶ 19).

**DISCUSSION:**

In the instant Motion, Defendants seeks summary judgment as to Plaintiffs’ claims in their entirety. (Rec. Doc. 52 at 2). With respect to the only claims that remain contested after briefing, Plaintiffs’ tort claims, Defendants argue that the instant Motion should be granted because there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law. (Rec. Doc. 52 at 2). Because Defendants’ Motion as to the loss of consortium claim depends on the disposition of the negligence claim, we begin with the negligence claim.

To establish a claim for negligence, a plaintiff must show: 1) the defendant had a duty or obligation recognized by law; 2) the defendant breached that duty; 3)

the plaintiff incurred loss or damage; and 4) a causal connection between the defendant's breach and the plaintiff's injury. Herczeg v. Hampton Twp. Mun. Auth., 766 A.2d 866, 871 (Pa. Super. Ct. 2001), alloc. denied, 788 A.2d 766 (Pa. 2001). Defendants argue for summary judgment on Mr. Mattis' negligence claim on the grounds that Plaintiffs failed to show that Defendants owed Mr. Mattis a duty. Thus, we limit our discussion to that element of Plaintiff's *prima facie* case.

With respect to Defendants' duty, "[t]he standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespassor, licensee, or invitee." Carrender v. Fitterer, 469 A.2d 120, 123 (Pa. 1983). In the instant action, the parties agree that Mr. Mattis is an invitee (see docs. 52 at 12-14; 60 at 5-6), and that "[p]ossessors of land owe a duty to protect invitees from foreseeable harm." Id. Thus, a possessor of land is liable only if he or she:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

Id.

However, under Pennsylvania law, "a possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land

whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Id. Under Pennsylvania law, for a danger to be "obvious," "'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment,'" and for a danger to be "known," it must "'not only be known to exist, but . . . also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated.'" Id. at 123-24 (internal citations omitted). Although the question of whether a danger was known or obvious may be decided by a court "where reasonable minds could not differ as to the conclusion," it is usually a question of fact for the jury. Id.

Defendants argue that even assuming *arguendo* that the exit of Stairwell No. 4 were a safety hazard, it was a known and obvious danger to Mr. Mattis. (Rec. Doc. 52 at 14). Defendants rely on Mr. Mattis' testimony that he knew of, and indeed, reported, a missing stoop outside of Stairwell No. 4 on two separate occasions, once approximately two years before the alleged incident and a second time approximately nine months to a year after his first report. Relying heavily on factual similarities between Carrender and the instant action, Defendants contend that given Mr. Mattis' own testimony, he "elected not to use the 'safe' route, that being one of at least two available ADA accessibility routes, to exit the building,

and instead, utilized an exit which he believed to be a 'known' and 'obvious' hazard." (Rec. Doc. 52 at 15).

Plaintiffs note that Defendants may be making "an assumption of the risk argument or a known danger argument" or a "choice of paths" argument. (Rec. Doc. 60 at 7, 10). Regardless of the label attributed to Defendants' argument, the thrust of Plaintiffs' response remains:

> Not only was the danger not obvious to Mr. Mattis as he was approaching it [Stairwell No. 4] from inside the building, he had no knowledge of the impending danger until he opened the door to exit and fell . . . [Mr. Mattis] had no knowledge that the doorway through which he was exiting, later determined to be exit stair No. 4, was the same exit which he previously reported to his supervisor, Jerry Sandel, as being dangerous.

(Rec. Doc. 60 at 8). If, in fact, Mr. Mattis was unaware that the exit nearest the Radiology Department, Stairwell No. 4, was that which he had reported as missing an outside stoop, Defendants' reliance on Carrender is misplaced. Mr. Mattis' knowledge of Stairwell No. 4's alleged defect is not dispositive because Plaintiffs allege that he did not realize on July 22, 2002, that he had selected the allegedly defective exit. Mr. Mattis' alleged unawareness distinguishes this action from that in Carrender, where the plaintiff was aware of the ice covering the pavement just outside of the parking spot that she selected.

After a careful review of the record, we hold that read in the light most favorable to Plaintiffs as the nonmoving party, the question of Defendants' duty to

Mr. Mattis involves a genuine issue of material fact: whether Mr. Mattis realized that the exit that he used on July 22, 2002 was the same as that which he knew to be missing its exterior stoop.[2] Accordingly, Defendants are not entitled to summary judgment on Mr. Mattis' negligence claim.

As Defendants have acknowledged (see doc. 52 at 15), because this Court held that the granting of summary judgment on Mr. Mattis' negligence claim would be improper, Defendants' argument, that Mrs. Mattis' derivative loss of consortium claim should be dismissed, also fails. (See Rec. Doc. 52 at 15). Accordingly, Mrs. Mattis' loss of consortium claim remains.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. Defendants' Motion (doc. 50) is **GRANTED** in part and **DENIED** in part:

    a. Defendants' Motion is **GRANTED** to the extent that any claims Plaintiffs alleged under Title III of the ADA are hereby dismissed.

    b. Defendants' Motion is **DENIED** in all other respects**.**

[2] The Court expresses no opinion as to Mr. Mattis' knowledge thereof. Plaintiffs have offered numerous rationales for Mr. Mattis' use Stairwell No. 4 (see docs. 60 at 10; 59, ¶ 15), and any determinations as to his true reasons for doing so, and the implications derived therefrom, are questions of fact that cannot and need not be decided at this juncture.

s/ John E. Jones III
John E. Jones III
United States District Judge